# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DEEL, INC., a Delaware corporation,

    Plaintiff,

    v.

PEOPLE CENTER, INC., D/B/A
RIPPLING, a Delaware corporation; and
DOES 1 – 100, inclusive.

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. NO. N25C-04-239 DJB

Date Submitted:  November 10, 2025
Date Decided:  February 5, 2026

## MEMORANDUM OPINION ON PLAINTIFF'S
## MOTION TO DISQUALIFY - DENIED

Bartholomew J. Dalton, Esq. and Michael C. Dalton, Esq., Dalton & Associates, P.A., Wilmington, DE, and Nicholas G. Borelli, Esq., Skadden, Arps, Slate, Meagher & Flom LLP, *attorneys for Plaintiff.*

Michael A. Barlow, Esquire, Gates H. Young, Esquire, Quinn Emanuel Urquhart & Sullivan, LLC, Wilmington, DE, *attorneys for Defendants.*

**BRENNAN, J.**

## I.   INTRODUCTION

Pending before the Court is Plaintiff's, Deel, Inc (hereinafter "Deel") Motion to Disqualify opposing counsel.[1] The instant motion seeks an order from the court disqualifying Quinn Emanuel Urquhart & Sullivan, LLP, (hereinafter "Quinn" or "Quinn Emmanuel") from representing Defendant, People Center, Inc. *d/b/a* Rippling Inc. (hereinafter "Rippling").[2]

## I.   RELEVANT FACTS AND PROCEDURAL HISTORY

Rippling is one of Deel's competitors.[3] On September 19, 2023, Alex Bouaziz, Deel's CEO was introduced to Robert Schwartz ("Schwartz"), a partner at Quinn Emmanuel's Los Angeles office, regarding prospective litigation.[4] Deel maintains that the consultation discussed prospective litigation against Rippling and another company.[5] Rippling claims their discussions were about potentially bringing litigation against the other company.[6] This dispute is at the heart of this motion.

---

[1] *Deel, Inc. v. People Center, Inc., D/B/A Rippling*, et al., N25C-04-239 DJB Docket Item (hereinafter "D.I.") 16.
[2] *Id.*
[3] *Id.* at 13.
[4] *Id.*
[5] *Id.*
[6] Def's. Ans. Br. in Opp'n, D.I. 25 at 3.

Following the introduction, Schwartz emailed Alex Bouaziz stating that he needed to obtain some preliminary information to conduct a conflict check.[7] In response to the email, Schwartz had a preliminary phone call, lasting five to ten minutes, with Alex Bouaziz and Philippe Bouaziz, Deel's CFO.[8] During the phone call, Schwartz requested that both Alex and Philippe Bouaziz "provide only the 'bare information' needed to clear conflicts."[9]

After the phone call, Schwartz emailed Alex and Philippe Bouaziz and informed them that there were no conflicts.[10] Later that same day, Alex and Philippe Bouaziz had a call lasting almost one hour with Schwartz. Philippe Bouaziz sent an email to Elisabeth Diana ("Diana"), Deel's former head of communications, requesting that she "[p]lease share the info [with Quinn] so we will [b]e able to later have a discussion with them on their opinion and how they can help."[11] On September 20, 2023, Diana sent the requested email to Schwartz.[12]

On or around September 22, 2023, Schwartz had a final phone call, lasting between thirty minutes and one hour, with Diana and Spiros Komis ("Spiros"),

---

[7] D.I. 16 at 13.
[8] *Id*. at 14.
[9] *Id*. at 14.
[10] D.I. 16 at 14, Alex Bouaziz Decl. Ex. 1 at 1.
[11] D.I. 16 at 15-16, Alex Bouaziz Decl. Ex. 2 at 1.
[12] D.I. 16 at 16, Alex Bouaziz Decl. Ex. 2 at 1.

Deel's U.S. Head of Legal.[13] During their consultation discussions with Schwartz,

Deel claims they disclosed:

> (i) legal and public relations strategy in how to respond to Rippling's attacks; (ii) discussion of the impacts of Rippling's attacks on Deel's operations; (iii) the composition, functionality, and capability of Deel's leadership and internal legal team, including Deel's marketing capabilities and resources; (iv) "red flag issues" of significant concern; (v) allies and external resources that Deel would utilize to address and respond to Rippling's attacks, including confidential sources; (vi) Deel's own internal analyses and views of Rippling's operations; (vii) detailed information about Deel and its executives financials, operations and valuations; (viii) current and former Deel employees who could act as witnesses in litigation against Rippling; and (ix) Deel's overall litigation strategy against Rippling, which included supporting documents, witnesses, and potential areas of concern.[14]

Following this discussion, Schwartz sent an email to Komis, Diana and Phillippe

and Alex Bouaziz that recapped their conversation.[15]

On March 17, 2025, Quinn filed suit on behalf of Rippling against Deel in

the United States District Court for the Northern District of California, based on

the alleged theft of trade secrets ("the California Action").[16] On March 19, 2025,

Deel's previous counsel sent Quinn a letter raising their concerns about their

representation of Rippling in the California Action.[17]

---

[13] D.I. 16 at 16, Komis Decl. ¶ 5.
[14] D.I. 16 at 26-27, Komis Decl. ¶ 6.
[15] D.I. 25 at 14
[16] D.I. 16 at 18, Alex Bouaziz Decl. ¶ 20, Komis Decl. Ex. 1.
[17] D.I. 16 at 18, Komis Decl. Ex. 2.

On March 20, 2025, Quinn implemented an ethical screen over Schwartz.[18] On March 28, 2025, Quinn responded in a letter and maintained that it "treats its ethical obligations with the utmost seriousness" and was unaware of any confidential information that Deel shared with the firm.[19] Deel filed the instant suit on April 24, 2025, and ultimately chose not to hire Quinn to represent them.[20] On July 1, 2025, attorneys from Quinn entered their appearance as counsel on behalf of Rippling.[21]

On July 2, 2025, Deel's Delaware co-counsel sent a letter to Quinn alleging their representation in the instant Action violates Delaware Lawyers' Rules of Professional Conduct Rule 1.18 and requested notification that they had withdrawn as counsel.[22] On July 8, 2025, Quinn responded and maintained that "it never established an attorney-client relationship with Deel," its "discussions with Deel only involved a potential defamation action involving a Deel competitor," and that "no confidential strategy, thoughts, impressions, or financial data was provided by Deel…."[23] Further, Quinn informed Deel that an ethical screen had been implemented and Schwartz "has not and will not perform any

---

[18] D.I. 25 at 8.
[19] D.I. 16 at 18-19, Komis Decl. Ex. 2 at 2.
[20] D.I. 16 at 17.
[21] *Id*. at 17-18.
[22] *Id*. at 19.
[23] *Id*. at 19-20.

work on Rippling's matters" and "has not shared and will not share any information from his discussions with Deel."[24]

On July 23, 2025, Deel filed the instant Motion to Disqualify.[25] On September 5, 2025, Rippling filed its Answering Brief in opposition.[26] On September 26, 2025, Deel filed its Reply Brief.[27] Oral argument was held on October 21, 2025.[28] At argument, discussion was had surrounding whether the Court should review *in camera* the September 22 recap email. On November 10, 2025, the Court requested the mentioned email, as referenced in footnote 3 to the Answering Brief, for *in camera* review.[29] The Court has now reviewed all documents submitted. This issue is now ripe for decision. This is the Court's decision **DENYING** the Motion to Disqualify.

## II. STANDARD OF REVIEW

This Court generally disfavors disqualifying an attorney; disqualification is an appropriate sanction only when the trial court judge "finds that the representation frustrates the fairness of the proceedings."[30] Upon consideration of such a motion,

---

[24] D.I. 25 at 10.
[25] D.I. 16.
[26] D.I. 25.
[27] D.I. 27.
[28] D.I. 30.
[29] D.I. 31.
[30] *Sanchez-Caza v. Est. of Whetstone*, 2004 WL 2087922, at *1 (Del. Super. Ct. Sept. 16, 2004).

the court must "weigh the effect of any alleged conflict" with the "fairness and integrity of the proceedings." [31] Disqualifications should not be liberally granted. [32]

"When considering a motion for disqualification, a court must weigh the current client's choice of counsel with a "former client's right to protect confidences revealed in a prior representation.'"[33] The court will disqualify counsel only if the movant demonstrates "by clear and convincing evidence" that an existing violation "taints the proceeding."[34] The court must make this finding if the movant has established "(1) either an actual violation of the rules of professional conduct or litigation misconduct of counsel which (2) threatens the legitimacy of the judicial proceedings."[35]

## III. ANALYSIS

Deel alleges the September 2023 consultation with its representatives and Schwartz surrounded the matter central to this litigation, creating a conflict of interest which mandates Quinn Emanuel's disqualification in this action. Rippling maintains this consultation concerned another matter, and disqualification is

---

[31] *Sanchez-Caza*, 2004 WL 2087922, at \*4 (citing *Acierno v. Hayward,* 2004 WL 1517134 (Del. Ch. July 1, 2004).

[32] *Id.*

[33] *Sanchez-Caza*, 2004 WL 2087922, at \*4 (citing *Cramer v. Pepper,* 1985 WL 635610, at \*2 (Del. Super. Jun. 24, 1985).

[34] *State ex rel. Rogers v. Bancorp Bank*, 307 A.3d 360, 370 (Del. Super. Jan. 3, 2023).

[35] *Id*.

unnecessary.  As evidence, Rippling cites to a redacted September 22, 2023, email following the consultation, which was provided to the Court for *in camera* review.[36]  This email supports Rippling's claims and demonstrates that the consultation that Deel had with Schwartz was about prospective litigation involving an entirely different matter.  Nonetheless, all arguments have been considered below.

### A. QUINN'S REPRESENTATION IS NOT A CLEAR CONFLICT UNDER RULE 1.18 BECAUSE SCHWARTZ HAS BEEN SCREENED OFF.

Deel alleges Quinn received confidential information during the September 2023 consultation that is "significantly harmful to Deel in this matter."  As a result, Deel argues Quinn must be disqualified as counsel for Rippling as their representation violates Delaware Lawyers' Rules of Professional Conduct 1.18 (hereinafter "Rule 1.18").[37]  Should representation be permitted, Deel claims that they will be severely prejudiced in the current action because of the alleged disclosures made to Schwartz.

Rule 1.18 defines a prospective client as "[a] person who consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter."[38]  Rule 1.18 further provides that a lawyer who has learned information

---

[36] D.I. 25 at 14.
[37] D.I. 16 at 25.
[38] Del. RPC R. 1.18(a).

from a prospective client shall not use or disclose such information unless otherwise permitted.[39] Under the Rule, a lawyer who has learned information from a prospective client "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter" unless an exception applies.[40] Representation will be permitted if:

> (1) both the affected client and the prospective client have given informed consent, confirmed in writing, or; (2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and (ii) written notice is promptly given to the prospective client.[41]

Rule 1.18 is not violated regardless of whether Schwartz received sensitive information during his September 2023 consultation with Deel, as the second exception to the Rule applies. Not only has Schwartz been properly screened off of the instant litigation, but he is not working on any cases involving Rippling, nor receiving any fees from this litigation against Deel. Quinn maintains that Schwartz has not and will not share any of the information he learned during his consultation

---

[39] Del. RPC R. 1.18(b).
[40] Del. RPC R. 1.18(c).
[41] Del. RPC R. 1.18(d).

with Deel in 2023.[42]  Additionally, Quinn provided Deel with written notice of the steps taken to ensure there are no improprieties on July 8, 2025.[43]

Even where an attorney is disqualified due to a conflict, this in and of itself does not automatically disqualify that attorney's firm from representing a client.[44] Schwartz has been screened off and is not receiving any fees nor involved in this action.[45] Disqualification is not mandated here.

### B. QUINN'S REPRESENTATION IS NOT A CLEAR CONFLICT UNDER RULE 1.18 BECAUSE THE INFORMATION RECEIVED IS NOT SIGNIFICANTLY HARMFUL IN THIS MATTER.

A singular violation of the Delaware Lawyers' Rules of Professional Conduct is an insufficient basis to justify the disqualification of an attorney from an action; Disqualification is only appropriate "if the challenged conduct prejudices the fairness of the proceedings."[46] Therefore, after determining whether there was a violation under Rule 1.18, the Court must assess whether the alleged violation will prejudice the current action.

---

[42] D.I. 25 at 8.

[43] *Id*. at 10.

[44] *C.f. Sanchez-Caza*, 2004 WL 2087922, at *4 (citing *Bowden v. Kmart Corp.,* 1999 WL 743308, at *2 (Del. Super. July 1, 1999).

[45] D.I. 25 at 25.

[46] *Dollar Tree, Inc. v. Dollar Express LLC*, 2017 WL 5624298, at *5 (Del. Ch. Nov. 21, 2017).

Here, even if the information obtained by Quinn during the September 2023 consultation triggers Rule 1.18, which it does not, it is unlikely that it would be significantly harmful or prejudicial to Deel in the current action. Specifically, because all of Deel's alleged claims involve events that took place well after the September 2023 consultation or allege statements that were either made after this date or are time barred under Delaware law.[47] Any disclosures made to Schwartz are unlikely to challenge the fairness of this proceeding. Accordingly, Deel fails to state a valid claim to disqualify Quinn as counsel for Rippling under Rule 1.18.

In *Elenox v. Apple*, the United States District Court of Delaware assessed a disqualification motion based on "the likelihood of an attorney's loyalty to a former client being compromised against a current client's interest in maintaining his chosen counsel."[48] The *Elonex* Court determined that the motion to disqualify was improper

---

[47] According to Rippling, Deel's claim fails for three reasons. First, Rippling claims that in Deel's nine causes of action "five of those claims rely exclusively on events that transpired well after Deel's brief consultation with Mr. Schwarz in September 2023." Next, Rippling contends that the claim for false advertising under the Deceptive Trade Practices Act is based on an advertising campaign that did not occur until more than one year after the consultation with Quinn. Finally, Rippling maintains that "[t]he remaining claims - for defamation, trade libel, tortious interference, and conspiracy are premised on statements allegedly disparaging Deel made both before and after the consultation, and include statements for which any claim is time barred." Rippling further explains that "the FAC includes statements that it discloses were made in October 2023 and June 2024, well after Deel's brief consultation with Schwartz [a]nd Deel identifies statements from January and March 2023 even though Delaware imposes a two-year . . . statute of limitations on defamation." D.I. 25 at 8-9.

[48] *Elonex I.P. Holdings v. Apple Comp.,* 142 F. Supp 2d 579, 583 (2001).

based on "the facts that the matters were not directly related, the challenged counsel's work on the case was limited, and that the work was done out of different offices."[49] While *Elonex* evaluated disqualification under a different Rule of Professional conduct, its analysis is instructive.[50] Here, Deel's claim fails because the challenged counsel never conducted any work since Schwartz and Quinn Emanuel were never retained by Deel. Moreover, Deel has failed to demonstrate that the consulted matters are directly related to the current action. Consequently, Deel has failed to meet their burden to show that disqualification of Quinn is proper.

### C. THE SEPTEMBER 22, 2023, EMAIL CORRESPONDENCE RECAPPING THE SCWARTZ-DEEL MEETING SHOWS DISQUALIFICATION IS NOT REQUIRED.

Following *in camera* review, the redacted email recapping the September 2023 meeting between Deel's representatives and Schwartz is equally dispositive. This email recapped conversations centered on a different matter than the litigation at issue in this civil action. Therefore, with the aforementioned screens implemented by Quinn to ensure Schwartz has no involvement or dealings in the representation of Rippling, Deel cannot show clear and convincing evidence that a violation of the

---

[49] *Id.*

[50] There is a lack of decisional law surrounding Delaware Rule of Professional Conduct 1.18. However, Comment 1 to the Rule notably states: "A lawyer's consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients." D.R. Prof. Cond. 1.18, cmt. 1.

Rules of Professional conduct exists, or that the proceedings are tainted to the point that requires disqualification. The legitimacy of the judicial proceedings in this litigation are not threatened by Quinn's continued representation of Rippling in this suit.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Disqualify Quinn Emmanual is **DENIED.**

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge